STATEN ISLAND RAPID TRANSIT RAILWAY COMPANY *v.* PHOENIX INDEMNITY COMPANY.

No. 307. Argued March 7, 1930.—Decided March 17, 1930.

*Mr. Frederick H. Wood* for appellant.

*Mr. Jeremiah F. Connor* was on the brief for appellee.

Mr. Chief Justice Hughes delivered the opinion of the Court.

This case was submitted to the state court upon an agreed statement of facts, and presented the question of the validity of a provision of section twenty-nine of the Workmen's Compensation Law of New York under the due process and equal protection clauses of the Fourteenth Amendment.

Joseph Perroth, in the course of his employment by one Anderson, was killed through the negligence of the appellant, The Staten Island Rapid Transit Railway Company. Perroth left surviving him a dependent, his widow. The administratrix of Perroth brought an action against the appellant to recover damages caused by his death, and the claim was settled by the payment of an amount in excess of that which the dependent would have been entitled to receive under the Workmen's Compensation Law. In these circumstances, there being no right of recovery by the dependent of Perroth against his employer, subdivi-

sions eight and nine of section fifteen of the Workmen's Compensation Law became applicable.[1]

---

[1] Subdivisions eight and nine of section fifteen, as they stood at the time of Perroth's death, were as follows:

§ 15. Schedule in Case of Disability. The following schedule of compensation is hereby established:

. . . . .

" 8. Permanent total disability after permanent partial disability. If an employee who has previously incurred permanent partial disability through the loss of one hand, one arm, one foot, one leg, or one eye, incurs permanent total disability through the loss of another member or organ, he shall be paid, in addition to the compensation for permanent partial disability provided in this section and after the cessation of the payments for the prescribed period of weeks special additional compensation for the remainder of his life to the amount of sixty-six and two-thirds per centum of the average weekly wage earned by him at the time the total permanent disability was incurred. Such additional compensation shall be paid out of a special fund created for such purpose in the following manner: The insurance carrier shall pay to the state treasurer for every case of injury causing death in which there are no persons entitled to compensation the sum of five hundred dollars. The state treasurer shall be the custodian of this special fund, and the commissioner shall direct the distribution thereof.

" 9. Expenses for rehabilitating injured employees. An employee, who as a result of injury is or may be expected to be totally or partially incapacitated for a remunerative occupation and who, under the direction of the state department of education is being rendered fit, to engage in a remunerative occupation, shall receive additional compensation necessary for his rehabilitation, not more than ten dollars per week of which shall be expended for maintenance. Such expense and such of the administrative expenses of the state department of education as are properly assignable to the expense of rehabilitating employees entitled to compensation as a result of injuries under this chapter, shall be paid out of a special fund created in the following manner: The employer, or if insured, his insurance carrier, shall pay into the vocational rehabilitation fund for every case of injury causing death, in which there are no persons entitled to compensation, the sum of five hundred dollars. The state treasurer shall be the custodian of this special fund. . . ."

The scheme of these provisions was the creation of two special funds in the hands of the state treasurer, the one to be used in paying additional compensation to employees incurring permanent total disability after permanent partial disability; and the other, in the vocational education of employees so injured as to need rehabilitation. These special funds were to be maintained by payments by the insurance carrier, as defined in the act,[2] of five hundred dollars for each of the two funds in those cases of injury causing death where there were no persons entitled to compensation under the act, and the payments made out of these special funds for the benefit of employees of the described classes were to be over and above the compensation which the act required to be made by the respective employers of such employees.

In the present instance, the respondent, as the insurer of Perroth's employer, paid to the state treasurer the amount of two awards, of five hundred dollars each, made jointly against Perroth's employer and the respondent under subdivisions eight and nine of section fifteen. The respondent then brought this suit under section twenty-nine of the Workmen's Compensation Law to recover this amount from the appellant which had wrongfully caused the death. That section provides:

" In case of the payment of an award to the state treasurer in accordance with subdivisions eight and nine of section fifteen such payment shall operate to give to the employer or insurance carrier liable for the award a cause of action for the amount of such payment together with the reasonable funeral expenses and the expense of medi-

---

[2] The definition is as follows: " ' Insurance carrier ' shall include the state fund, stock corporations or mutual associations with which employers have insured, and employers permitted to pay compensation directly . . ."

cal treatment which shall be in addition to any cause of action by the legal representatives of the deceased."

Two questions were submitted to the state court:

" First. Was the state treasurer entitled to the awards made in his favor and paid by the plaintiff?

" Second. If the first question is answered in the affirmative, is the plaintiff entitled to recover the amount of said awards from the defendant by reason of section twenty-nine of the Workmen's Compensation Law? "

The Appellate Division of the Supreme Court of the State answered both questions in the affirmative, and the judgment entered accordingly for the respondent was affirmed by the Court of Appeals. That court decided that the provision of section twenty-nine which was held to justify the recovery did not violate the Fourteenth Amendment as denying either due process of law or the equal protection of the laws.

The due process clause is invoked on the ground that there is no reasonable basis for the creation of a cause of action against the appellant, and that the statute arbitrarily takes the property of one person for the private use and benefit of another. It is recognized that the State may create new rights and duties and provide for their appropriate enforcement. Recovery for an injury causing death and employers' liability and workmen's compensation acts are familiar illustrations. But it is argued that the appellant committed no wrong against the respondent, and that for the wrong against the deceased and his widow the appellant has made full restitution. The fact of this restitution, however, is an inadequate basis for the conclusion sought. It can not be said that in providing for the recovery of the loss sustained by the dependents or next of kin of a deceased, the State has exhausted its authority to provide redress for the wrong.

The State may permit the recovery of punitive damages in an action by the representatives of the deceased in order to strike effectively at the evil to be prevented. *Pizitz* v. *Yeldell,* 274 U. S. 112, 116. The State might also, if it saw fit, provide for a recovery by the employer for the loss sustained by him by reason of the wrongful act. The wrong may also be regarded as one against the State itself, in depriving the State of the benefit of the life of one owing it allegiance. For this wrong the State might impose a penalty. This is not contested. And it is well settled that the mode in which penalties shall be enforced, and the disposition of the amounts collected are matters of legislative discretion. *Missouri Pacific Railway Company* v. *Humes,* 115 U. S. 512, 523.

But it is said that the legislature can not cause a liability to accrue to a stranger against whom the wrongdoer committed no breach of duty. If, however, the State might penalize the wrongdoer by requiring a payment to be made by him directly to the state treasury, there would seem to be no reason why the State can not compel the wrongdoer to indemnify the employer, and his insurance carrier, for payments properly required of them and made to the State where the liability for such payments has arisen by reason of the death caused by the wrongful act. The State in this instance could have imposed a penalty on the wrongdoer and turned the amount over to the employer or his insurer for their indemnity. It could accomplish the same purpose without circumlocution.

There is no question here as to the validity of the provisions for the creation of the special funds in the hands of the state treasurer, in order to provide additional compensation to employees in cases requiring special consideration, or as to the validity of the requirement of payment by employers and their insurance carriers in order to maintain such funds. The constitutionality of these statutory

provisions has been sustained by this Court. *R. E. Shee-han Co.* v. *Shuler,* 265 U. S. 371; *New York State Rail-ways* v. *Shuler,* 265 U. S. 379. These provisions were an appropriate part of the plan of the Workmen's Compensation Law. It was not considered that the due process clause was violated because the additional compensation, to be made in the described classes of cases, was not paid to the injured employees by their immediate employers or because payment was to be made out of public funds established for the purpose. *R. E. Sheehan Co.* v. *Shuler, supra.* Thus, the respondent is in no proper sense a stranger to the wrongful act of the appellant. The respondent under the law of the State insured the employer of the deceased, and, as insurer, was required by the statute to make the payments in question to the state treasury. As these payments became obligatory because of the death caused by appellant's wrongful act, the indemnification of the respondent was a natural and reasonable requirement in consequence of that act. In creating the cause of action in order to obtain this indemnification, there was no lack of due process of law, as there was none in the means afforded by the State for enforcing the liability. In the action to enforce it the appellant could, as the state court has held in the present case, "avail itself of any defense which it has or ever had. It has a right to establish, if it can, that there could have been no recovery in the negligence action which it settled, and may test the validity of the awards against the insurance carrier by any defense which the carrier could have interposed, as it was not a party to that proceeding and is not bound thereby".

Nor do we find any sufficient ground for the contention that the statutory provisions in question denied the equal protection of the laws. The classification is attacked as arbitrary because it is said to rest on the circumstance

whether or not there are persons entitled to compensation under the statute in the particular case, and that this depends on the further circumstance whether there are dependents and, if there are, whether they recover at least as much as the compensation for which the act provides. But this is the classification with respect to the requirement of the payments by the employer or his insurer for the maintenance of the special funds. That can not be said to be an unreasonable classification, as it provides for those cases where there are no persons entitled to compensation under the act, and thus the immediate employer and his insurer are relieved of the obligation to pay compensation. And, in view of the decisions of this Court, above cited, the validity of subdivisions eight and nine of section fifteen of the statute, as construed by the state court, requiring the payments by the employer and the insured in this instance, have not been questioned. So far as the provision of section twenty-nine is concerned, it operates uniformly against all wrongdoers in like circumstances, that is, whenever awards as required by subdivisions eight and nine of section fifteen have been made against the employer, or his insurer, and such awards have been paid to the state treasurer.

*Judgment affirmed.*